**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————— x

Sanaa Clemente, individually and on           :
behalf of all others similarly situated,        :        Case No.
                                                            :
                 Plaintiff,                           :
v.                                                       :        **CLASS ACTION COMPLAINT**
                                                            :
                                                            :        <u>**JURY TRIAL DEMANDED**</u>
Jocko Fuel, LLC,                                  :
                                                            :
                 Defendant.                        :
                                                            :
———————————————————— X

      Plaintiff, Sanaa Clemente (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

<u>**NATURE OF THE ACTION**</u>

      1.    This action seeks to remedy the deceptive and misleading business practices of Jocko Fuel, LLC (hereinafter "Defendant") with respect to the manufacturing, marketing, and sale of Defendant's Jocko Mölk Protein Shake Chocolate product throughout the state of New York and throughout the country (hereinafter the "Product").

      2.    Defendant has improperly, deceptively, and misleadingly labeled and marketed its Product to reasonable consumers, like Plaintiff, by stating, "WHY MÖLK SETS A HIGHER STANDARD Clean fuel. Built for performance. MÖLK shakes are made without artificial sweeteners, colors, or hidden ingredients—just premium protein and functional ingredients that deliver results without compromise." "UNBEATABLE STANDARDS. UNCOMPROMISING FUEL. No shortcuts. No gimmicks. Fuel that meets the highest standard." "Third Party Tested: Integrity is non-negotiable. Independent labs test every batch for purity, potency, and safety.

What's on the label is what's in the product. No excuses." while omitting and not disclosing to consumers on its packaging that the Product is contaminated with, or risks being contaminated with, unsafe levels of cadmium.   According to the World Health Organization, cadmium is a known human carcinogen that exerts toxic effects on the kidneys, skeleton, and respiratory systems.[1]

3.    Defendant specifically lists the ingredients in the Product on the labeling; however, Defendant fails to disclose that the Product contains, or is at the risk of containing, cadmium.

4.    A few representative examples of Defendant's lack of disclosure on the Product are depicted below:

---

[1] https://www.who.int/teams/environment-climate-change-and-health/chemical-safety-and-health/health-impacts/chemicals/cadmium#:~:text=Cadmium%20exerts%20toxic%20effects%20on,media%20relevant%20to%20population%20exposure.





5.      Cadmium is an especially dangerous and toxic heavy metal when consumed. Cadmium is used in many products, including batteries, pigments, metal coatings, and plastics, and it is found in cigarette smoke.  Exposure to even low levels of cadmium in air, food, water, and tobacco smoke over time may build up cadmium in the kidneys and cause kidney disease and fragile bones.  Cadmium is considered a cancer-causing agent.

6.      Consumers like the Plaintiff trust manufacturers such as Defendant to sell products that are safe and free from harmful known substances, including cadmium.

7.      Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that the food products they purchase will not contain, or risk containing, any knowingly harmful substances.

8.      Unfortunately for consumers, like Plaintiff, the food Product they purchased contained, or was at risk of containing, cadmium.

9.      Independent testing demonstrates that the product purchased by Plaintiff is contaminated with cadmium.

10.     Defendant is using a marketing and advertising campaign that omits from the ingredients lists that the Product contains cadmium. This omission leads a reasonable consumer to believe they are not purchasing a product with a known heavy metal when in fact they are purchasing a product contaminated with cadmium.

11.     Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product—the packaging and label itself. As such, a reasonable consumer reviewing Defendant's label reasonably believes that they are purchasing a product that is safe for oral ingestion and does not contain any harmful heavy metals.

12.     Indeed, consumers expect the ingredient listing on the packaging and label to accurately disclose the ingredients within the Product. Thus, reasonable consumers would not think that Defendant is omitting that the Product contains, or is at risk of containing, cadmium.

13.     Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Product does contain, or risk containing, cadmium, which is dangerous to

one's health and well-being. Nevertheless, Defendant does not list or mention cadmium anywhere on the Product's packaging or labeling.

14.    Plaintiff and Class Members relied on Defendant's misrepresentations and omissions of the safety of the Product and what is in the Product when they purchased it.

15.    Consequently, Plaintiff and Class Members lost the entire benefit of their bargain when what they received was a food product contaminated with a known heavy metal that is harmful to consumers' health.

16.    That is because Defendant's Product containing, or at risk of containing cadmium, a known dangerous substance, has no value.

17.    As set forth below, food products, such as Defendant's Product, are in no way safe for human consumption and are entirely worthless.

18.    Alternatively, Plaintiff and Class Members paid a price premium for the Product based upon Defendant's marketing and advertising campaign including its false and misleading representations and omission on the Product's label. Given that Plaintiff and Class Members paid a premium for the Product, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

19.    Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350.  Defendant also breached and continues to breach its warranties regarding the Product.  Defendant has been and continues to be unjustly enriched.

20.    Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Product during the applicable statute of limitations period (the "Class Period").

6

## FACTUAL BACKGROUND

21.    Defendant manufactures, markets, advertises, and sells protein products.

22.    Consumers have become increasingly concerned about the effects of ingredients in products that they orally ingest.  Companies, such as Defendant, have capitalized on consumers' desire for food products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

23.    Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as cadmium, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Product contains or is at risk of containing on the Product's packaging or label.

24.    The Product's packaging does not identify cadmium.  Indeed, cadmium is not listed in the ingredients section, nor is there any warning about the inclusion (or even potential inclusion) of cadmium in the Product.  This leads reasonable consumers to believe the Product does not contain, and is not at risk of containing, cadmium.

25.    However, the Product contains, or is at risk of containing, cadmium.

26.    Defendant is a sophisticated corporation that is in the business of producing, manufacturing, selling, and distributing food products, including producing and manufacturing the contaminated Product.

27.    Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Product and possess unique and superior knowledge regarding the manufacturing process of the Product, the manufacturing process of the ingredients and raw materials the Product contains, and the risks associated with those processes, such as the

risk of cadmium contamination, as well as the ability to test the Product for cadmium contamination prior to releasing the Product into the stream of commerce.

28.     Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its Product. Such knowledge is not readily available to consumers like Plaintiff and Class Members.

29.     Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Product.

30.     Therefore, Defendant's false, misleading, and deceptive omissions regarding the Product containing cadmium is likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

31.     Defendant's misrepresentations and omissions were material and intentional because people are concerned with what is in the products that they orally ingest. Consumers such as Plaintiff and the Class Members are influenced by the marketing and advertising campaign, the Product's label, and the listed ingredients. Defendant knows that if they had not omitted that the Product contained cadmium, then Plaintiff and the Class would not have purchased the Product at all.

32.     Through its deceptive advertising and labeling, Defendant has violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label, or other thing containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article which, to its knowledge, is falsely described or indicated upon any such package or vessel containing the same, or label thereupon, in any of the particulars specified.

33.     Consumers rely on marketing and information in making purchasing decisions.

34.     By omitting that the Product includes cadmium on the label of the Product throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase a product with a harmful heavy metal such as cadmium.

35.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

36.     Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

37.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

38.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for a product marketed without cadmium over comparable products not so marketed.

39.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and the Class Members in that they:

   a.  Paid a sum of money for a Product that was not what Defendant represented;

   b.  Paid a premium price for a Product that was not what Defendant represented;

   c.  Were deprived of the benefit of the bargain because the Product they purchased was different from what Defendant warranted;

   d.  Were deprived of the benefit of the bargain because the Product they

9

purchased had less value than what Defendant represented;

e.  They ingested a substance that was of a different quality than what Defendant promised; and

f.  Were denied the benefit of the properties of the Product Defendant promised.

40.  Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Product they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Product.

41.  Plaintiff and the Class Members paid for a Product that does not contain Cadmium. Since the Product does indeed contain cadmium, a harmful heavy metal, the Product Plaintiff and the Class Members received was worth less than the Product for which they paid.

42.  Plaintiff and the Class Members all paid money for the Product; however, Plaintiff and the Class Members did not obtain the full value of the advertised Product due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Product than they would have had they known the truth about the Product. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

43.  Plaintiff and Class Members read and relied on Defendant's representations about the Product and purchased Defendant's Product based thereon. Had Plaintiff and Class Members known the truth about the Product, i.e., that they contain a harmful heavy metal (i.e. cadmium), they would not have been willing to purchase it at any price, or, at minimum would have paid less for it.

## JURISDICTION AND VENUE

44.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) minimal diversity exists because one or more putative Class members are citizens of a different state than the Defendant in that numerous members of the putative Class are domiciled in New York, and Defendant Jocko Fuel, LLC is a citizen of Maine; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

45.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

46.     Venue is proper because Plaintiff and many Class Members reside in the Southern District of New York, and throughout the state of New York. A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

### Plaintiff

47.     Plaintiff is a citizen and resident of Bronx County, New York.  During the applicable statute of limitations period, Plaintiff purchased and used Defendant's Product that contained cadmium, including the Product referenced above.

48.     More specifically, Plaintiff purchased the Product numerous times throughout the class period from Amazon.com and other locations.  Plaintiff's most recent purchase was from Amazon.com in 2025, purchasing the Jocko Mölk Protein Shake Chocolate for an approximate retail price of $40.99.

11

49.    Plaintiff purchased the Product in the state of New York and had the product shipped to her home in the state of New York.

50.    Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Product, Plaintiff would not have been willing to purchase the Product.  Plaintiff purchased, purchased more of, and/or paid more for, the Product than she would have had she known the truth about the Product. The Product Plaintiff received was worthless because they contain the known harmful heavy metal, cadmium. Alternatively, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions.  Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

51.    Defendant, Jocko Fuel, LLC, is a Maine corporation, and has a place of business in Jay, Maine.

52.    Defendant manufactures, markets, advertises, and distributes the Product throughout the United States.  Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Product.

## CLASS ALLEGATIONS

53.    Plaintiff brings this matter on behalf of herself and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

54.    The Class is defined as all consumers who purchased the Product anywhere in the United States during the Class Period.

55.    Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Product in the state of New York at any time during the Class Period (the "New York Subclass").

56.    The Class and New York Subclass are referred to collectively throughout the Complaint as the Class.

57.    The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

58.    <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

59.    <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.    Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Product;

b.    Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Product;

c.    Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Product;

d.   Whether Defendant's false and misleading statements and omissions concerning its Product were likely to deceive the public; and

e.   Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

60.   <u>Typicality</u>: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Product. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

61.   <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims are common to all members of the Class, she has a strong interest in vindicating her rights, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

62.   <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

63.   <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.   The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

14

b.  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.  When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

f.  This class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i.  It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase its Product.

64.    Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members

predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Subclass Members)**

65.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

66.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

67.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Product.

68.     There is no adequate remedy at law.

69.     Defendant misleadingly, inaccurately, and deceptively advertises and markets its Product to consumers.

70.     Defendant's improper consumer-oriented conduct—including failing to disclose that the Product has cadmium—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase Defendant's Product and to use the Product when they otherwise would not have. Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

71.    Plaintiff and the New York Subclass Members have been injured inasmuch as they purchased a Product that was mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

72.    Defendant's advertising and Product's packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Product.

73.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

74.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

75.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

76.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

77.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination

> thereof, but also the extent to which the advertising fails to reveal
> facts material in the light of such representations with respect to the
> commodity or employment to which the advertising relates under
> the conditions proscribed in said advertisement, or under such
> conditions as are customary or usual . . .

78.    Defendant's labeling and advertisements contain untrue and materially misleading

statements and omissions concerning its Product inasmuch as it misrepresents that the Product is

safe for use and doesn't list that the Product contains cadmium.

79.    Plaintiff and the New York Subclass Members have been injured inasmuch as they

relied upon the labeling, packaging, and advertising and purchased a Product that was mislabeled,

unhealthy, and entirely worthless. Accordingly, Plaintiff and the New York Subclass Members

received less than what they bargained and paid for.

80.    Defendant's advertising, packaging, and Product's labeling induced Plaintiff and

the New York Subclass Members to buy Defendant's Product.

81.    Defendant made its untrue and/or misleading statements and representations

willfully, wantonly, and with reckless disregard for the truth.

82.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus.

Law § 350.

83.    Defendant made the material misrepresentations described in this Complaint in its

advertising and on the Product's packaging and labeling.

84.    Defendant's material misrepresentations were substantially uniform in content,

presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Product

were and continue to be exposed to Defendant's material misrepresentations.

85.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices,

Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory,

treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

86.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

87.    Defendant provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Product is safe for use and does not contain cadmium.

88.    Defendant omitted that the Product contains a known heavy metal from its ingredients labeling. This omission would lead reasonable consumers to believe that the Product did not contain a known heavy metal, when in fact, the Product was contaminated with cadmium as stated herein.

89.    The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

90.    These affirmations of fact became part of the basis for the bargain and were material to Plaintiff and Class Members' transactions.

91.    Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Product.

92.    Defendant knowingly breached the express warranties by including cadmium in the Product sold to Plaintiff and the Class without properly notifying them of its inclusion in the Product.

93.    Within a reasonable time after it knew or should have known, Defendant did not change the Product's label to include cadmium in the ingredients list or to otherwise warn consumers that the Product contains, or is at risk of containing, cadmium.

94.    Defendant thereby breached the following state warranty laws:

a.    Code of Ala. § 7-2-313;

b.    Alaska Stat. § 45.02.313;

c.    A.R.S. § 47-2313;

d.    A.C.A. § 4-2-313;

e.    Cal. Comm. Code § 2313;

f.    Colo. Rev. Stat. § 4-2-313;

g.    Conn. Gen. Stat. § 42a-2-313;

h.    6 Del. C. § 2-313;

i.    D.C. Code § 28:2-313;

j.    Fla. Stat. § 672.313;

k.    O.C.G.A. § 11-2-313;

l.    H.R.S. § 490:2-313;

m.    Idaho Code § 28-2-313;

n.    810 I.L.C.S. 5/2-313;

o.    Ind. Code § 26-1-2-313;

p.    Iowa Code § 554.2313;

q.    K.S.A. § 84-2-313;

r.    K.R.S. § 355.2-313;

s.    11 M.R.S. § 2-313;

t. Md. Commercial Law Code Ann. § 2-313;

u. 106 Mass. Gen. Laws Ann. § 2-313;

v. M.C.L.S. § 440.2313;

w. Minn. Stat. § 336.2-313;

x. Miss. Code Ann. § 75-2-313;

y. R.S. Mo. § 400.2-313;

z. Mont. Code Anno. § 30-2-313;

aa. Neb. Rev. Stat. § 2-313;

bb. Nev. Rev. Stat. Ann. § 104.2313;

cc. R.S.A. 382-A:2-313;

dd. N.J. Stat. Ann. § 12A:2-313;

ee. N.M. Stat. Ann. § 55-2-313;

ff. N.Y. U.C.C. Law § 2-313;

gg. N.C. Gen. Stat. § 25-2-313;

hh. N.D. Cent. Code § 41-02-30;

ii. II. O.R.C. Ann. § 1302.26;

jj. 12A Okl. St. § 2-313;

kk. Or. Rev. Stat. § 72-3130;

ll. 13 Pa. Rev. Stat. § 72-3130;

mm. R.I. Gen. Laws § 6A-2-313;

nn. S.C. Code Ann. § 36-2-313;

oo. S.D. Codified Laws, § 57A-2-313;

pp. Tenn. Code Ann. § 47-2-313;

qq.    Tex. Bus. & Com. Code § 2.313;

rr.    Utah Code Ann. § 70A-2-313;

ss.    9A V.S.A. § 2-313;

tt.    Va. Code Ann. § 59.1-504.2;

uu.    Wash. Rev. Code Ann. § 6A.2-313;

vv.    W. Va. Code § 46-2-313;

ww.    Wis. Stat. § 402.313; and

xx.    Wyo. Stat. § 34.1-2-313.

95.    As a direct and proximate result of Defendant's breach of the express warranties, Plaintiff and Class Members were damaged in the amount of the price they paid for the Product, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members in the Alternative)**

96.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

97.    Plaintiff, on behalf of herself and consumers nationwide, brings a claim for unjust enrichment.

98.    Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling their Product while misrepresenting and omitting material facts.

99.    Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling their Product at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendant's benefit and

enrichment. Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

100.    Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the Product, which was not as Defendant represented it to be.

101.    It is inequitable for Defendant to retain the benefits conferred by Plaintiff and Class Members' overpayments.

102.    Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a)    Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b)    Awarding monetary damages and treble damages;

(c)    Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(d)    Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(e)    Awarding punitive damages;

(f)    Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and

reimbursement of Plaintiff's expenses; and

(g)      Granting such other and further relief as the Court may deem just and proper.


Dated: January 26, 2026

Respectfully submitted,

**SULTZER & LIPARI, PLLC**

By:     <u>/s/ Jason P. Sultzer</u>
Jason P. Sultzer, Esq.
Daniel Markowitz, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

Russell M. Busch
**BRYSON HARRIS SUCIU**
**& DEMAY PLLC**
11 Park Place, 3rd Floor
New York, NY 10007
Tel: (919) 926-7948
rbusch@brysonpllc.com

Nick Suciu III*
**BRYSON HARRIS SUCIU**
**& DEMAY PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: (616) 678-3180
nsuciu@brysonpllc.com


*Counsel for Plaintiffs and the Class*

*\*Pro hac vice forthcoming*